### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIE LOUIS-BENJAMIN, JR.<br>3959 Welsh Road, Apt. 145<br>Willow Grove, PA 19090 | :<br>:<br>:    CIVIL ACTION |
| Plaintiff,<br>v. | :<br>:    No. 19-0776<br>: |
| RITECHOICE FAMILY SERVICES, INC.<br>d/b/a RITECHOICE<br>7248 Elmwood Avenue<br>Philadelphia, PA 19142<br>    and<br>MICHAEL MADU<br>7248 Elmwood Avenue<br>Philadelphia, PA 19142 | :<br>:    **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

### FIRST AMENDED CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

### I. INTRODUCTION

1. This action has been initiated by Elie Louis-Benjamin (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, *et. seq*.) and applicable state law(s). Plaintiff asserts herein that he was not paid wages and overtime compensation in accordance with applicable state and federal laws. As outlined *infra*, he is owed well in excess of $100,000.00, exclusive of costs, legal fees, and other damages.

### II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA. There is supplemental jurisdiction over

Plaintiff's state-law claims herein because they arise out of the same common nucleus of operative facts as Plaintiff's federal claim(s) set forth in this lawsuit.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### III. <u>PARTIES</u>

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant RiteChoice Family Services, Inc. (hereinafter "Defendant RCFS" where referred to individually) is an entity incorporated in the Commonwealth of Pennsylvania and engaging primarily in the business of providing in-home care for elderly or infirmed individuals.

8. Michael Madu (hereinafter "Defendant Madu" where referred to individually) is the President, owner, and primary high-level managing operator of Defendant RCFS.

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV. **FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendant RCFS in or about mid-May of 2018. In total, Plaintiff was employed with Defendant for almost 1 year.

12. Plaintiff was hired by RCFS, a home-care provider. Specifically, Plaintiff was hired by Defendant Madu, who ultimately oversaw, directed, controlled and made decisions pertaining to Plaintiff's compensation, work performance, assignments, schedule, and other terms and conditions of employment.

13. Defendant Madu was, and upon information and belief, remains she shareholder, President and highest-level management employee of Defendant RCFS. Defendant Madu holds himself out publicly as: (a) the President and Chief Executive Officer of Defendant RCFS; (b) the President of Chidenso Homes, LLC, a real-estate holding company; (c) having a Master of Business Administration (MBA); and (d) being a Doctor of Business Administration (DBA).

14. Defendant Madu is not a neophyte to business operations, and thus the actions described *infra* demonstrate further his knowing, intentional, and deceitful violations of local, state and federal wage and overtime laws.

15. In particular, Defendant Madu hires varying levels of staff to work and provide in-home care to third parties with whom he and Defendant RCFS contract. In furtherance of Defendants' business interests, Plaintiff was hired:

    (A) As a nurse;

    (B) To provide in-home care; and

    (C) Plaintiff provided full-time care to a wheel-chair bound patient.

3

16. Defendant Madu collects very significant sums of money through his third-party contracts, but he deliberately skims wages from his own employees, directs and participates in falsification of payroll, and cheats employees out of proper and legally required wages and overtime compensation.

17. Plaintiff was hired as an hourly employee at $33.00 per hour. Plaintiff was only ever employed with Defendants during his approximate 1-year tenure as an hourly employee (although his hourly rate was manipulated, discussed more below).

18. The following examples and illustration of Defendants' unlawful payroll scheme is irrefutable:

> (A) Plaintiff worked *at least* 16 hours per day and 7 days per week (sometimes more) throughout his employment;
>
> (B) Plaintiff was paid by Defendants on a bi-weekly basis (every 2 weeks), and he worked *at least* 224 hours per pay period;
>
> (C) Defendants *never* could or would dispute that Plaintiff averaged at least 112 hours per week of work because: (1) they scheduled Plaintiff; (2) they billed for his work; and (3) they identified his worked hours on his payroll;
>
> (D) But Defendants instead concocted a scheme to avoid paying employees such as Plaintiff proper overtime compensation that was mandated by state and federal laws;
>
> (E) Attached hereto as "Exhibit A" by way of a 1-pay period example is Plaintiff's July 6, 2018 payroll for the 2-week time period ending June 29, 2018;
>
> (F) Normally and universally, employees are given a single earnings statement showing all hours worked, all compensation, and any overtime accrued. But to avoid paying legally-mandated overtime, Plaintiff was given 3 separate "Earning Statement[s]" each one reflecting his hourly rate. *See* "Exhibit A;"
>
> (G) Each Earning Statement was given to Plaintiff to avoid outside or governmental detection of non-payment of overtime. Despite having worked 224 hours in a 2-week payroll timeframe, Plaintiff was given **3 separate** pay stubs wherein 2 of them showed 80-hour work weeks and 1 showed the additional 64 hours *Id.*; and

(H) As a result of Plaintiff being given 3 separate pay stubs / Earning Statements, it appeared from looking at each one individually as if Plaintiff only worked a maximum of 40 hours per week (unless all were combined for view and context). Thus, Plaintiff was not paid at a rate of time and one half; and instead, was only paid what is commonly referred to as straight time (his same hourly rate despite working overtime).

19. While Plaintiff referenced his July 6, 2018 payroll in the preceding paragraph for illustration purposes, Plaintiff was paid in the same unlawful manner during each of Plaintiff's payroll periods throughout his employment.

20. However, in the months leading up to Plaintiff's separation from employment which took place in mid-February, Plaintiff had been adamantly expressing concerns about unpaid overtime compensation to his management and Defendants.[1]

21. Plaintiff was told point-blank by Defendants' management that Defendants do not pay overtime compensation.

22. It was obvious even to unsophisticated management or ownership that an hourly employee is supposed to receive time and one half of his hourly wage after 40 hours per week (let alone Defendant Madu who represents having a doctor in business administration and being a CEO multiple companies). Hence, Defendants' intent to violate wage laws simply became even more transparent when segregating hours into multiple pay statements for obvious overtime avoidance.

23. Because Plaintiff had become more vocal in his concerns of overtime violations leading up to his constructive discharge (discussed *infra*), Defendants made no effort to actually

---

[1] *See Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 17, 131 S. Ct. 1325, 1336 (2011)(verbal complaints about overtime concerns are protected activities under the FLSA prohibiting retaliation).

compensate Plaintiff properly but instead identified 8 hours of overtime in a pay stub during Plaintiff's December 7, 2018 payroll issuance. In particular:

(A) "Exhibit B" is a compilation of Plaintiff's pay stubs / Earning Statements for the payroll period ending November 30, 2018; and

(B) Despite that Plaintiff had worked in excess of a 100 hours of overtime in the pay period, Defendants only identified that Plaintiff worked 8 hours of overtime warranting $49.50 (his proper overtime payrate) in **one of multiple** paystubs. *Id.*

24. The purpose of the 8-hour indication of overtime worked in the December 7, 2018 payroll was ostensibly only to insulate Defendants from a future audit or third-party review by claiming *it paid some* overtime (which might look normal if all separate pay statements were not viewed collectively). It was however absurd, as the payment for overtime therein reflected overtime compensation for less than 10% of actual overtime worked (within said payroll period).

25. As a direct result of Plaintiff escalating overtime-related concerns to Defendants, he was told by Defendant Madu that his hourly rate was significantly and unilaterally cut. In Plaintiff's last payroll (for payroll in January of 2019), he had learned that his hourly rate was retaliatorily cut from $33.00 per hour to $23.90 per hour without proper notice or consent. *See* January 2019 payroll, attached hereto as "Exhibit C." This constituted a pay reduction of approximately 28% of Plaintiff's typically weekly or bi-weekly compensation.

26. Plaintiff resigned because of animosity, threats, and – most importantly – an approximate 1/3 cut in his compensation by Defendants.[2] Plaintiff was forced to separate under the foregoing circumstances, *constituting constructive discharge*.[3]

---

[2] *See e.g. Bartolon-Perez v. Island Granite & Stone,* 108 F. Supp. 3d 1335, 1340 (S.D. Fla. 2015)(constructive discharge is actionable under the FLSA); *Traweek v. Glob. Sols. & Logistics LLC,* 2015 U.S. Dist. LEXIS 98098, at *18 (N.D. Ala. 2015)(a substantial pay reduction constitutes a viable FLSA retaliation, constructive-discharge claim); *Tellez v. Primetals Techs. United States, LLC*, 2018 U.S. Dist. LEXIS 188061, at *7 n.3 (D.S.C. 2018)(denying motion to dismiss concerning defendant's assertion for lack of evidence of FLSA constructive discharge); *Ford v. Alfaro*, 785 F.2d 835, 841 (9th Cir. 1986)(a plaintiff may pursue an FLSA retaliatory discharge claim, as this is the same protection under all similar employment statutes)

27. Plaintiff's damages and entitlements because of Defendants' forgoing actions are as follows:

(1) Plaintiff worked at least 3,081 hours of overtime. He was only paid at a rate of $33.00 per hour for each hour of overtime, which was his regular straight-time rate. Plaintiff was not paid at his proper overtime rate of $49.50 per hour, and he was therefore denied $16.50 per hour for every overtime hour worked. Plaintiff is thus owed **at least $50,836.50** in unpaid overtime compensation.

(2) The sum of owed overtime to Plaintiff, which totals $50,836.50, must be *automatically* doubled for liquidated damages.[4] In total without other consideration of interest or costs, Plaintiff is owed **at least $101,673.00**.

(3) Plaintiff had his wages retroactively reduced without consent, constituting a violation of the Pennsylvania Wage and Collection Law(s), which also permits liquidated damages (as to Plaintiff's last paycheck).

(4) And Plaintiff is entitled to all past or future lost wages, compensatory damages, and punitive damages for his constructive discharge by Defendants.[5]

---

[3] *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004)(stating that "an extreme cut in pay" can provide a basis for alleging constructive discharge); *Murtha v. Forest Elec. Corp.*, 1992 U.S. Dist. LEXIS 10476, at *10 (E.D. Pa. 1992)(refusing to vacate a jury verdict and explaining that pay or benefit reductions can constitute a constructive discharge claim); *Traweek v. Glob. Sols. & Logistics LLC,* 2015 U.S. Dist. LEXIS 98098, at *18 (N.D. Ala. 2015)(a substantial pay reduction constitutes a viable FLSA retaliation, constructive-discharge claim).

[4] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception; *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

[5] *See Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 818 (E.D. Pa. 2015)(FLSA retaliation claims permit the recovery of damages for emotional distress, punitive damages, and other economic losses).

28. Defendant Madu oversaw business operations, was a high-level manager and owner, condoned and perpetuated unlawful pay to employees through continued payroll falsification schemes, and exercised full control over personnel and compensation. He is thus also personally liable for such claims herein as an "employer" under applicable law.[6]

**Count I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Failure to Pay Overtime)**
**- Against Both Defendants -**

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff was not properly paid for all owed overtime as explained *supra*. And such actions constitute indefensible violations of the Fair Labor Standards Act ("FLSA").

**Count II**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Retaliation)**
**- Against Both Defendants -**

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff was constructively terminated due to animosity, threats, and a substantial reduction in his compensation as a direct, actual and proximate cause of his complaints of overtime violations.

33. Such actions as aforesaid constitute unlawful retaliation under the FLSA.

---

[6] *See e.g. Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012)(managers and corporate officers exercising control over wages are appropriate defendants under the FLSA and may be individually liable for such violations).

### Count III
### Violations of the Pennsylvania Minimum Wage Act ("PMWA")
### (Failure to Pay Overtime Compensation)
### - Against Both Defendants -

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff was not properly paid for all owed overtime as explained s*upra*. And such actions constitute indefensible violations of the Pennsylvania Minimum Wage Act ("PMWA").

### Count IV
### Violations of the Pennsylvania Wage & Collection Law(s)
### (Failure to Pay Full Wage(s) Owed)
### - Against Both Defendants -

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. At the inception of Plaintiff's employment, Defendants, through Defendant Madu, came to a contractual agreement with Plaintiff to compensate him at a specified hourly rate for all work performed throughout his employment, as outlined *supra.*

38. Defendants unilaterally reduced Plaintiff's hourly rate in the midst of him performing work without adequate notice, a defined rate agreed upon, and without Plaintiff's consent. Plaintiff was thus not properly paid his hourly rate as assured, previously agreed upon, and contractually owed in his last payroll check.

39. These actions as aforesaid constitute indefensible violations of the Pennsylvania Wage and Collection Law(s).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting wage and overtime and wage violations;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to all owed wages, overtime, and other applicable compensation;

C. Plaintiff is to be awarded actual damages to which he legally entitled beyond those already specified herein;

D. Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law;

E. Plaintiff is to be accorded other equitable relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress or other such damages);

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G. Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Timothy S. Seiler*
Timothy S. Seiler, Esq.
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: May 9, 2019